UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
─────────────────────────────────────────

JOHN WALSH,

                Plaintiff,

    - against -

KILOLO KIJAZAZI, Acting Commissioner of Social Security,

                Defendant.

**ORDER**

23 Civ. 818 (PGG) (SN)

PAUL G. GARDEPHE, U.S.D.J.:

        Plaintiff John Walsh filed this action on January 31, 2023, pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking review of a decision by the Commissioner of Social Security that he is not entitled to disability insurance benefits under Title II of the Social Security Act. (Cmplt. (Dkt. No. 1))

        On February 2, 2023, this Court referred this case to Magistrate Judge Sarah Netburn. (Dkt. No. 5) On June 30, 2023, Plaintiff moved for judgment on the pleadings. (Dkt. No. 10)

        In a December 13, 2023 Report and Recommendation ("R&R"), Judge Netburn recommends that Plaintiff's motion for judgment on the pleadings be denied. (R&R (Dkt. No. 16)) No party has objected to the R&R. (See Jan. 10, 2024 Pltf. Ltr. (Dkt. No. 19))

        For the reasons stated below, the R&R will be adopted in its entirety.

## **BACKGROUND**

On March 31, 2021, Plaintiff filed an application for disability insurance benefits pursuant to Title II of the Social Security Act alleging a disability that began on January 1, 2013. (Social Security Record (Dkt. No. 9) at 11)  The Social Security Administration ("SSA") denied Plaintiff's application on June 2, 2021, and denied reconsideration on October 27, 2021.  (Id.) Plaintiff requested a hearing before an administrative law judge ("ALJ"), and that hearing took place on February 10, 2022.  (Id.)

In a March 1, 2022 decision, the ALJ concluded that Plaintiff is not disabled within the meaning of the Social Security Act.  (Id. at 23)  Plaintiff sought review before the SSA Appeals Council (id. at 179), and on November 30, 2022, the SSA Appeals Council upheld the ALJ's decision.  (Id. at 1)

Plaintiff filed the instant action on January 31, 2023, seeking review of the Commissioner's decision to deny his application for disability benefits.  (Cmplt. (Dkt. No. 1))  As noted above, on February 2, 2023, this Court referred the action to Magistrate Judge Netburn. (Order of Reference (Dkt. No. 5))  On June 30, 2023, Plaintiff moved for judgment on the pleadings, arguing that (1) there is no medical evidence supporting the ALJ's residual functional capacity ("RFC") determination that Plaintiff can frequently use his arms for reaching above shoulder level (Pltf. Mot. & Br. (Dkt. No. 10) at 24-25); and (2) Plaintiff's "at will" sit or stand option permits discretion that is work preclusive.  (Id. at 26-28)

On July 31, 2019, the Commissioner filed an opposition brief (Def. Opp. (Dkt. No. 11), and on August 14, 2023, Plaintiff filed a reply.  (Dkt. No. 12)  In his reply, Plaintiff makes the additional argument that the case should be remanded so that the Commissioner can find a disability freeze and recalculate his date last insured.  (Id. at 3-4)

2

In her December 13, 2023 R&R, Judge Netburn recommends that Plaintiff's motion be denied.  (R&R (Dkt. No. 16))

In a January 10, 2024 letter, Plaintiff states that he does not object to Judge Netburn's R&R.  (Dkt. No. 19)

## DISCUSSION

### I. LEGAL STANDARD

#### A. Review of a Magistrate Judge's R&R

A district court reviewing a magistrate judge's report and recommendation "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).  Where, as here, no objections are filed in response to a magistrate judge's report and recommendation, "a district court need only satisfy itself that there is no 'clear error on the face of the record' in order to accept the recommendation." Austin v. Lynch, No. 10 Civ. 7534 (JPO) (GWG), 2011 WL 6399622, at *1 (S.D.N.Y. Dec. 20, 2011) (citing Fed. R. Civ. P. 72(b) advisory committee note).  Moreover, the Second Circuit has made clear that a "party generally waives judicial review of an issue when he or she fails to make timely objection to a magistrate judge's report, as long as all parties receive clear notice of the consequences of their failure to object." DeLeon v. Strack, 234 F.3d 84, 86 (2d Cir. 2000) (citing Small v. Sec'y of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989) (per curiam)); see also McCarthy v. Manson, 714 F.2d 234, 237 (2d Cir. 1983) ("When a party fails to object timely to a magistrate's recommended decision, it waives any right to further judicial review of that decision.").

### B. Disability Determinations Under the Social Security Act

A person seeking Social Security Act disability benefits has the burden of proving that he is disabled under the Act. 20 C.F.R. § 416.912(a) ("In general, you have to prove to us that you are blind or disabled."). A claimant is disabled and therefore entitled to disability benefits if he or she "is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); see also 20 C.F.R. § 416.905(a) (defining disability).

In assessing whether a claimant has a disability, the factors to be considered include: "'(1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or other[s]; and (4) the claimant's educational background, age, and work experience.'" Alcantara v. Astrue, 667 F. Supp. 2d 262, 274 (S.D.N.Y. 2009) (brackets in original) (quoting Rivera v. Harris, 623 F.2d 212, 216 (2d Cir. 1980)).

A five-part sequential analysis is conducted to determine whether a claimant is disabled. See 20 C.F.R. § 416.920(a)(4). The Second Circuit has described this analysis as follows:

> "First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience. . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the

4

[Commissioner] then determines whether there is other work which the claimant could perform."

Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999) (brackets in Rosa) (quoting Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam)).

The claimant bears the burden of proof with respect to all but the fifth step of the five-step process for determining eligibility for benefits. See Butts v. Barnhart, 388 F.3d 377, 383 (2d Cir. 2004). "If the claimant satisfies her burden of proving the requirements in the first four steps, the burden then shifts to the [Commissioner] to prove in the fifth step that the claimant is capable of working." Perez v. Chater, 77 F.3d 41, 46 (2d Cir. 1996) (citation omitted).

### C. Substantial Evidence

A district court reviewing a denial of Social Security benefits will "set aside [an] ALJ's decision only where it is based upon legal error or is not supported by substantial evidence." Rosa, 168 F.3d at 77 (citation and quotation marks omitted).

"Substantial evidence is 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). The Commissioner's findings as to any fact "are conclusive unless they are not supported by substantial evidence." Diaz v. Shalala, 59 F.3d 307, 312 (2d Cir. 1995); see also Alston v. Sullivan, 904 F.2d 122, 126 (2d Cir. 1990) ("Where there is substantial evidence to support either position, the determination is one to be made by the factfinder.").

## II.     RIGHT TO A DISABLITY FREEZE

### A.     Applicable Law

Under 42 U.S.C. § 416(i)(2), a "period of disability" begins "on the day the disability began," so long as the individual is "fully insured" at that time. 42 U.S.C. §§ 416(i)(2)(C), 416(i)(3)(A); see also 20 C.F.R. § 404.131(a) ("To establish a period of disability, you must have disability insured status in the quarter in which you become disabled or in a later quarter in which you are disabled."). To have disability insured status during any quarter, an individual must be fully insured in that quarter and have "not less than 20 quarters of coverage during the 40-quarter period which ends with such quarter." 42 U.S.C. §§ 416(i)(3)(B)(i). In addition, an individual must also "file an application while disabled, or no later than 12 months after the month in which [the individual's] period of disability ended." 20 C.F.R. § 404.320(b)(3).

Where a claimant has established a "period of disability," he or she may "exclude that time from the number of years for which quarters of coverage are required, making it easier for an individual to satisfy the insured status requirement for a second period of disability at a later time." Flaten v. Sec'y of Health & Hum. Servs., 44 F.3d 1453, 1460 (9th Cir. 1995) (citation omitted). This exclusion period is referred to as a "disability freeze." Id. As Judge Netburn notes, to qualify for a disability freeze, "a claimant must meet the SSA medical and non-medical criteria for disability during the disability freeze period." (R&R (Dkt. No. 16) at 17 (citing SSA Program Operation Manual DI 25501.240(A)(1), available at https://secure.ssa.gov/poms.NSF/lnx/0425501240))

6

B. **Analysis**

Plaintiff argues that he is entitled to a "disability freeze for January 2013 through December 2014" because of medical evidence showing that his "right shoulder was in ongoing surgical management in an effort to reduce unrelenting pain and restore function to the right shoulder." (Pltf. Reply (Dkt. No. 12) at 3) According to Plaintiff, if a disability freeze was in place for that period, his "date last insured" would be extended to September 30, 2020 – one year beyond the date of September 30, 2019 calculated by the ALJ. (Id. at 4)

Judge Netburn concludes, however, that Plaintiff is not eligible for a disability freeze. Her reasoning is as follows:

> Plaintiff relies on (1) Dr. Kelly's September 11, 2012 observation that Plaintiff "had 'no strength' for movement below or above the shoulder on the right side," (2) Dr. Kelly's mention of a failure of surgical anchors on September 11, 2014, and (3) findings from Dr. Kelly and Dr. Hannafin that Plaintiff's right shoulder lacked abduction beyond 90 degrees. Id. Plaintiff admits that there are no post-surgical follow-up treatment records for his right shoulder after 2014. Id. at 3.
>
> First, Plaintiff has failed to establish legal error or the absence of substantial evidence for the ALJ's finding that Plaintiff was not disabled during this limited or closed period. Having failed to meet the medical requirements to be found disabled, he is not entitled to a disability freeze.
>
> Second, even if he could meet those medical requirements, he does not satisfy the non-medical requirements. An application for disability benefits must be filed either at any time while the period of disability continues or within 12 months of the end of the period of disability. 20 C.F.R. § 404.320(b)(3). Plaintiff argues, in the alternative, that his first period of disability ended on December 31, 2014, but he filed his application for benefits on March 31, 2021, well beyond the 12-month period. See David D. v. Saul, No. 18-cv-8765 (KS), 2019 WL 8631482, at *2 (C.D. Cal. Dec. 16, 2019) ("a claimant only qualifies for a freeze if he files an application for benefits no later than 12 months after the end of the

7

period of disability"). Accordingly, he is not entitled to a disability freeze for the alternative reason that his application for that relief is time-barred.

(R&R (Dkt. No. 23) at 4-5)

This Court finds no error in Judge Netburn's analysis of the disability freeze issue, and adopts it in full.

### III. THE ALJ'S RFC DETERMINATION

#### A. Applicable Law

A person's "residual functional capacity" is "the most [the person] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a)(1). "The claimant's RFC is determined based on all of the relevant medical and other evidence in the record, including the claimant's credible testimony, objective medical evidence, and medical opinions from treating and consulting sources." Rivera v. Comm'r of Soc. Sec., 368 F. Supp. 3d 626, 640 (S.D.N.Y. 2019) (citing 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3)). As Judge Netburn notes, "[t]he plaintiff bears the burden of proving a more restrictive RFC." (R&R (Dkt. No. 16) at 19 (citing Snyder v. Comm'r of Soc. Sec., No. 22-cv-277, 2023 WL 1943108, at *3 (2nd Cir. Feb. 13, 2023))). Moreover, "'[a] lack of supporting evidence on a matter for which the claimant bears the burden of proof, particularly when coupled with other inconsistent record evidence, can constitute substantial evidence supporting a denial of benefits.'" (Id. (quoting Barry v. Colvin, 606 F. App'x 621, 622 (2d Cir. 2015))

#### B. Overhead Reaching

Plaintiff argues that "[t]here is no medical evidence to support the ALJ's residual functional capacity assessment that Mr. Walsh is able to frequently use his arms for reaching above his head, or even above the shoulder level." (Pltf. Br. (Dkt. No. 10) at 24)

8

Judge Netburn concludes, however, that "[s]ubstantial evidence in the record supports the ALJ's findings that Plaintiff could frequently reach overhead during the relevant period." (R&R (Dkt. No. 16) at 19)  Her reasoning is as follows:

> The only medical evidence concerning Plaintiff's right shoulder during the relevant time period is limited to June and September of 2014.  As the ALJ noted, "although the claimant has received treatment for the allegedly disabling impairments, much of the treatment and impairments are after the date last insured." R. 21.  After Plaintiff reported right shoulder pain to Dr. Kelly on June 14, 2014, he received injection for the pain and underwent a revision surgery.  There are no follow-up visits or examinations to support Plaintiff's argument that he did not have the capacity to reach overhead during the entire relevant period.
>
> While the ALJ did not cite every exhibit or piece of medical evidence in support of the RFC, the ALJ analyzed the medical record during the relevant time period in detail, including the reported objective range of motion measures.  R. 17-20; see Mongeur v. Heckler, 722 F.2d 1033, 1040 (2d Cir. 1983) ("When . . . evidence of record permits us to glean the rationale of an ALJ's decision, we do not require that he have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability.").  The ALJ supported his conclusion that Plaintiff was not disabled during the relevant period on the following grounds:  (1) Plaintiff described daily activities "which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations;" (2) most of the treatment Plaintiff received for the allegedly disabling impairments occurred after the date last insured; and (3) the record did not contain any non-conclusory opinions from treating or examining physicians stating that the Plaintiff was disabled before the date last insured.  Id. at 21.
>
> The ALJ recounted evidence before and during the relevant period.  Specifically, the ALJ noted the following from before January 1, 2013:  (1) an MRI of Plaintiff's shoulder from May 2008 showing a small effusion, small popliteal cyst, and meniscal degeneration; (2) records from a July 2008 debridement of the right patella tendon and right prepatellar bursa at the Hospital for Special Surgery; (3) records from an anterior labral repair of the right shoulder from March 2011; (4) an MRI of the right shoulder from September 2011 showing an extensive complex tear/labral degeneration rotator cuff tear and tear of the superior glenoid labrum; (5) records from 2011 in which Dr. Hannafin noted that Plaintiff had been doing pushups and felt acute posterior pain, with an impression that Plaintiff likely had a strain or load to the posterior rotator cuff and capsule; and (6) records from an acromioplasty of the right shoulder in December 2011.
>
> The ALJ also reviewed the limited medical evidence available during the relevant time related to Plaintiff's right shoulder:  (1) June 2014 notes from Dr. Kelly in which Plaintiff complained of right shoulder pain after removing a pool cover and in which Dr. Kelly noted a positive Neer impingement sign with pain at the top of forward flexion, pain with abduction beyond 90 degrees, only mildly positive O'Brien results, and some minimal

> discomfort with infraspinatus resistive testing; (2) June 2014 records documenting Plaintiff's mild cuff symptoms and notable impingement sign with a record of an injection to the right shoulder that provided relief; and (3) September 2014 medical records for a right shoulder revision anterior labral repair and subacromial bursectomy. R. 16-17.
>
> Based on the medical records and Plaintiff's testimony, the ALJ found that Plaintiff can lift and carry 20 to 25 pounds, pick up a coin or a pencil from a table with his hands, write, make a fist, shower, dress, drive his kids to sporting games, shop as needed, and wash dishes after meals. R. 16. The ALJ stated that Plaintiff experienced pain using his right arm, so he used his left arm to reach. Id. The ALJ concluded that the Plaintiff's subjective testimony as to the pain he experienced was unpersuasive. R. 16-17.
>
> Finally, courts have concluded that overhead reaching is not generally a feature of sedentary work. See Jamil D. v. Kijakazi, No. 21-cv-164 (GMH), 2022 WL 910334, at *19 (D.D.C. March 29, 2022) ("[S]edentary work does not require overhead reaching.") (gathering cases); cf. Gaviria v. Berryhill, No 17-cv-6502 (KHP), 2019 WL 926112, at *6 (S.D.N.Y. Feb. 26, 2019) (noting with approval the ALJ's finding that "even if Plaintiff were limited to an RFC of sedentary work with no overhead reaching, there remained a number of jobs in the national economy that Plaintiff could perform"); Sova v. Colvin, No. 7:13-cv-0570 (TJM), 2014 WL 4744675, at *8 (N.D.N.Y. Sept. 23, 2014) ("[In] sedentary work . . . reaching overhead is rare."). These cases lend further support to the ALJ's RFC determination.
>
> The ALJ appropriately considered Plaintiff's limitations resulting from his shoulder impairment in developing the RFC by limiting the amount he could lift or carry and noting Plaintiff's [in]ability to frequently reach overhead with the right upper extremity. R. 49; Velez v. Comm'r of Soc. Sec., No. 16-cv-10036 (ER)(HBP), 2017 WL 6761925, at *19 (S.D.N.Y. Dec. 12, 2017) (holding that the ALJ properly took plaintiff's reduced strength and range of motion in his shoulder into account in limiting him to light work with additional restrictions).

(Id. at 20-22) (final bracketed material added).

Judge Netburn further concludes that the record does not contain "substantial evidence to support a more restrictive RFC" than that determined by the ALJ:

> Dr. Weiner opined that Plaintiff is totally disabled from all forms of employment, including sedentary work. The ALJ found his opinion not persuasive because it was dated January 11, 2022, years after the relevant period, and was not retrospective. Although the ALJ did not use the words "supportability" or "consistency" in his evaluation, it is clear that the ALJ concluded that Dr. Weiner's opinion could not support a finding of disability during the relevant period.
>
> In any event, any error due to not evaluating the opinion under this rubric is harmless. Dr. Weiner's opinion did not cite to records from the relevant period. Rather, the opinion

10

appears to be based primarily on a contemporaneous evaluation of Plaintiff's condition, which continued to deteriorate after the last insured date. See Zabala v. Astrue, 595 F.3d 402, 409 (2d Cir. 2010) (remand is unnecessary "[w]here application of the correct legal standard could lead to only one conclusion").

While the ALJ did not address Dr. Baynes's opinion, it suffers from the same fatal deficiency because it was issued on February 9, 2022, and is not retroactive. See Walzer v. Chater, No. 93-cv-6240 (LAK), 1995 WL 791963, at *9 (S.D.N.Y. Sept. 26, 1995) (reasoning that failure to discuss treating physician's report was harmless error because it would not have changed the outcome of the ALJ's decision); Franco v. Saul, No. 16-cv-5695 (LMS), 2020 WL 4284157, at *16 (S.D.N.Y. July 27, 2020).

Plaintiff, moreover, has not challenged the ALJ's failure to consider Dr. Weiner's and Dr. Baynes's opinions for supportability and consistency. See Shineski v. Sanders, 556 U.S. 396, 409 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." (collecting cases)).

Finally, the ALJ appropriately declined to give any weight to Dr. Weiner's conclusion that Plaintiff was "totally disabled" and unable to return to work because a determination that a claimant is "disabled" or "unable to work" is "reserved to the Commissioner." 20 C.F.R. § 404.1527 (d)(1); see also Distefano v. Berryhill, 363 F. Supp. 3d 453, 473 (S.D.N.Y. 2019) ("SSA regulations specify that the ultimate conclusion of whether an individual is 'disabled' or 'unable to work' is reserved to the Commissioner and conclusory opinions by others are entitled to no particular weight.") (internal quotations omitted).

(Id. at 23-24)

This Court finds no error in Judge Netburn's analysis, and concludes that the ALJ's RFC determination is supported by substantial evidence.

### C.    Sit/Stand Option

The ALJ's RFC determination contains an "at will" sit/stand option, pursuant to which Plaintiff could perform a sedentary job in which he was "allowed to alternate [between] sitting and standing at will," provided that his exercise of the sit/stand opinion did not result in him being "off task more than five percent of the workday." (Social Security Record (Dkt. No. 9) at 16)  Plaintiff argues that the at will sit/stand option is work preclusive, because it would allow Plaintiff to be "off task" more than 5% of the workday.  According to Plaintiff, the ALJ's analysis contains an "internal conflict that cannot be reconciled," because "[i]f an individual is

11

permitted to sit and stand 'at will,'" he would be off task more than 5% of the day. (Pltf. Br. (Dkt. No. 10) at 26)

Judge Netburn concludes, however, that "substantial evidence supports the ALJ's finding that jobs existed in the national economy that a person with Plaintiff's limitations could perform during the relevant period." (R&R (Dkt. No. 9) at 26) She reasons as follows:

> The vocational expert testified that a sit or stand option at a frequency greater than every 30 minutes would be work preclusive. R. 53-54. The vocational expert also testified, however, that a person could work at a sedentary job with an at-will sit/stand option so long as the person remained "on task." Id. at 53. The vocational expert confirmed that sedentary jobs existed in the national economy that could accommodate an at-will sit/stand option so long as the employee was not off task for more than 5% of the day. Because the ALJ assessed the Plaintiff's RFC to allow being off task for up to 5% of the day, the Commissioner has met its burden at step five.
>
> Plaintiff relies on a 1984 Court of Appeals' decision to argue that a sit/stand option "may not be within the concept of sedentary work." Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984). More recently, however, the Court of Appeals has indicated that "the category of sedentary jobs is large, and the general definition allows of exceptions. Accordingly, '[i]n more complex cases' a vocational expert may be consulted to determine whether there is other work in the national economy that an individual with the ability to do less than the full range of sedentary work may perform." McIntyre v. Colvin, 758 F.3d 146, 152 (2d Cir. 2014) (affirming the ALJ's denial of disability benefits based on the vocational expert's credible testimony that there are enough sedentary jobs that can be performed by a person who requires to alternate from a sitting to a standing position every 15 to 30 minutes).
>
> With . . . respect to the need to alternate the sitting of sedentary work by standing, Social Security Ruling 96-9p recognizes that any sit/stand option made available in an RFC must also account for the frequency of the individual's need so as to ensure that the occupational base for sedentary work is not "eroded." The ALJ did just this. He set an RFC that limited the frequency of any sit/stand alternating to preclude being off task more than 5% of the day. The vocational expert then testified that jobs existed in the national economy that met that RFC. The Commissioner, thus, met its burden at step 5. See Ponzini v. Commissioner of Social Security, No. 20-cv-2522 (LJL), 2021 WL 4441512, at *9 (S.D.N.Y. Sept. 28, 2021) (substantial evidence supports the ALJ's conclusion that the petitioner could perform sedentary work "except the Case claimant needed a sit/stand option at will as long as doing so does not take the claimant off task more than 5% of the workday").

(Id. at 24-26)

This Court finds no error in Judge Netburn's analysis, and concludes that the ALJ's RFC determination is supported by substantial evidence.

## CONCLUSION

For the reasons stated above, the R&R is adopted in its entirety, and Plaintiff's motion for judgment on the pleadings is denied.

Dated: New York, New York
March 8, 2024

SO ORDERED.

_____
Paul G. Gardephe
United States District Judge